Stewart, J.,
dissenting in part. I could well concur in the syllabus, majority opinion and judgments in the present cases were it not for a glaring feature of the record, which has been glossed over in the majority opinion and to which I shall presently allude.
It must be remembered that the defendants were not tried upon any charges of Communistic activities or upon the abhorrent statement made by Mrs. Morgan, the sole charge against each of them being contempt, which the General Assembly has made a mere misdemeanor punishable only by a fine (Section 12845, General Code [Section 2917.42, Revised Code], in the Morgan case) and by a fine of not more than $500 or imprisonment for not more than 10 days, or both (Section 12142, General Code [Section 2705.05, Revised Code], in the Raley, Stern and Brown case). Therefore, the vital question in the cases is, were the defendants guilty of contempt by standing on their claim of self-incrimination in refusing to answer some of the questions propounded to them by the commission?
The majority of the court reasons that, since the Ohio immunity statute gave the defendants immunity from the use of any of their testimony as evidence in any criminal proceeding in this state, and since the Supreme Court of the United States has decided that lack of state power to give witnesses protection against federal prosecution does not defeat the effect of a state immunity statute • to abolish protection against self-incrimination, the Ohio immunity statute deprived the defendants of the protection against self-incrimination afforded by the Constitution; and that, since defendants were presumed to *562 know the law, they were in contempt by not answering the questions propounded to them by the commission, because their right of protection against self-incrimination had been abolished.
Ordinarily, this reasoning would be quite logical, but, in the present cases, assuming that defendants were mistaken in their right to rely upon protection against self-incrimination, the commission was likewise mistaken as to the state of the law.
The commission was composed in part of able and experienced lawyers, and it hired special counsel, and yet the defendants were informed by the chairman of the commission that they had a right to rely upon their constitutional privilege against self-incrimination.
In the Morgan case, the chairman of the commission stated: “Mrs. Morgan, I should like to advise you under the Fifth Amendment you are permitted to refuse to answer questions that might tend to incriminate you.”
Even if the chairman was mistaken as to the law and the effect of the Ohio immunity statute, and Mrs. Morgan was likewise mistaken, how can it be said that she was in contempt of the commission in strictly following its direction and admonition ? The point is further emphasized by the fact that in evei’y instance when she refused to answer a question, claiming protection against self-incrimination, she was never directed to answer the question but the interrogator immediately proceeded with another inquiry.
With reference to the Raley, Stern and Brown case, the chairman of the commission was a witness and testified as follows :
“It was the policy of the commission not to press questions which we felt would be of an incriminating nature. For instance, whenever a witness was asked a question — I believe every witness before the commission was asked the question— are you or have you ever been a member of the Communist Party, and if the witness refused to answer that question, we did not press it. Frequently I made statements which indicated the policy of the commission. Whether it was to half of the witnesses before the commission or not, I don’t know. Probably less than half. But the statement was, ‘We will not re *563 quire you to answer questions which may incriminate yourself, but we want it clearly understood that you may not refuse to answer questions on the ground it would incriminate some one else.’ And I think through the record generally, although not probably always when I made the statement with respect to one it included the other.”
It seems to me that, since the defendants were apprised by the commission at the time they were testifying that they had a right to refuse to answer questions which might incriminate them, they could not possibly in following the admonition of the commission be in contempt of it except possibly as to the questions which the defendants were directed to answer.
In such a situation the case of Quinn v. United States, 349 U. S., 155, 99 L. Ed., 964, 75 S. Ct., 668, which was properly cited in the majority opinion in support of the third paragraph of the syllabus, is controlling with reference to the necessity of demanding an answer from a witness testifying before an investigating committee before the refusal of the witness to answer can place him in peril of prosecution for contempt.
The Quinn case involved a witness, before a federal legislative committee, charged with contempt. Speaking for the court, Mr. Chief Justice Warren said:
“Section 192, like the ordinary federal criminal statute, requires a criminal intent — in this instance, a deliberate, intentional refusal to answer. This element of the offense, like any other, must be proved beyond a reasonable doubt. Petitioner contends that such proof was not, and can not be, made in this case.
“* * * in short, unless the witness is clearly apprised that the committee demands his answer notwithstanding his objections, there can be no conviction under Section 192 for refusal to answer that question.
“Was petitioner so apprised here? At no time did the committee specifically overrule his objection based on the Fifth Amendment; nor did the committee indicate its overruling of the objection by specifically directing petitioner to answer. In the absence of such committee action, petitioner was never confronted with a clear-cut choice between compliance and noncompliance, between answering the question and risking prosecution *564 for contempt. At best he was left to guess whether or not the committee had accepted his objection.”
In the Morgan indictment the charges are that she did “unlawfully and willfully refuse to answer.”
Under the situation in the present cases, it seems clear to me that the defendants, after being apprised by the commission that they had a right to rely upon the protection against self-incrimination, could not be in contempt of the commission except as to the few questions which two of them were directed to answer.